2021 UT App 60

## THE UTAH COURT OF APPEALS

COOK MARTIN POULSON PC,
Appellee,
*v.*
DANIEL G. SMITH,
Appellant.

Opinion
No. 20190412-CA
Filed June 10, 2021

First District Court, Logan Department
The Honorable Kevin K. Allen
No. 140100505

Troy L. Booher, Beth E. Kennedy, and Russell S.
Walker, Attorneys for Appellant

Thomas J. Burns, Aaron R. Harris, and Elisabeth E.
Calvert, Attorneys for Appellees

JUDGE MICHELE M. CHRISTIANSEN FORSTER authored this Opinion,
in which JUDGES DAVID N. MORTENSEN and RYAN M. HARRIS
concurred.

CHRISTIANSEN FORSTER, Judge:

¶1 Daniel G. Smith appeals the district court's orders finding him in contempt. We reverse and remand for further proceedings.

## BACKGROUND

¶2 This matter first came before us in *Cook Martin Poulson PC v. Smith*, 2020 UT App 57, 464 P.3d 541. In that appeal, Smith challenged the district court's findings of contempt and concomitant entry of sanctions and judgment against him. *Id.*

¶ 1. We reversed the court's order and remanded for further proceedings. *Id.* ¶ 44.

¶3     While that appeal was pending, however, Cook Martin Poulson PC (CMP) took steps to enforce its judgment. Smith sought a stay of execution but was unable to obtain one because he could not post a bond or other security. In February 2018, in post-judgment proceedings, the district court ordered Smith "not to sell, loan, give away, or otherwise dispose of [his] non-exempt property pending" a hearing scheduled for March 5 (the First Supplemental Order). Following the hearing, the court issued a writ of execution directing the sheriff to seize specific property, including livestock, two promissory notes, and Smith's shares in Daniel G. Smith Inc. (DGSI). However, the court did not make any additional orders prohibiting Smith from disposing of his property.

¶4     When the sheriff sought to execute on the property in September 2018, Smith refused to turn over the promissory notes or the DGSI stock certificates because he claimed they were in safe deposit boxes to which he did not have access. In fact, the promissory notes had been moved to a safe deposit box in Idaho, and the stock certificates were held in a safe deposit box owned by Smith's wife. Smith also refused to turn over certain cattle because he had moved them out of state. CMP filed a motion for order to show cause, alleging that Smith should be held in contempt for violating the writ of execution and the First Supplemental Order by transferring the cattle out of state and refusing to turn over the promissory notes and stock certificates.

¶5     The court issued an order to show cause and scheduled a hearing on the contempt allegations and again ordered Smith, as of November 5, 2018, "not to sell, loan, give away, or otherwise dispose of [his] non-exempt property" (the Second Supplemental Order). This time, however, the court did not impose a time limit on the order. When the matter came before the court for a

hearing, it continued the hearing because CMP had not provided an affidavit from the sheriff.

¶6     In the meantime, CMP filed another motion for order to show cause based on additional conduct. In this motion, CMP alleged that Smith had violated the supplemental orders by pledging some of the cattle as security for a loan in September 2018 and selling off some cattle in October 2018.

¶7     The matter came before the district court again at the continued hearing on January 7, 2019. At that hearing, CMP asked Smith about the proceeds from the October sale of the cattle. Smith testified that he received $26,000 from selling the cattle and that he placed the sale proceeds in a bank account (the Cow Calf Account). He also confirmed that between November 13 and December 11, 2018, he spent approximately $26,100 out of the Cow Calf Account. However, he was not asked to provide any details about how the funds were used. Moreover, neither the court's order to show cause nor CMP's motion in support of that order identified Smith's expenditures from the Cow Calf Account as potentially contemptuous.

¶8     After the hearing, the court ruled that Smith could not be held in contempt for violating the writ of execution because that writ did not command him to do anything or prohibit him from acting. The court also determined that Smith could not be held in contempt for disposing of property between March 5, 2018, (when the First Supplemental Order expired) and November 5, 2018, (when the court issued the Second Supplemental Order) because there was no order prohibiting him from doing so during that time period. Because Smith's actions of moving the promissory notes to an out-of-state safe deposit box, selling cattle, and pledging cattle as security occurred during that time, they could not be contemptuous of a court order. Additionally, the court concluded that Smith could not be held in contempt for

attempting to gift stock certificates to his wife, because the date of the gift was unclear.[1]

¶9 However, the court did hold Smith in contempt (the First Contempt Order) for spending the proceeds of the cattle sale that were in the Cow Calf Account, since those expenditures were made after November 5. In addition to holding Smith in contempt for the expenditures, the court ordered Smith to return $26,100.45 to the Cow Calf Account and produce the DGSI stock certificates, which he had turned over to his wife, within fourteen days of the court's order. Smith did not turn over the money or the stock certificates as ordered. Instead, he filed two "precipes"[2] with the court explaining why he was not required to comply with the court's order. The first precipe asserted that Smith's wife had exercised her "right to demand and receive [Smith]'s indorsement" of the stock certificates under Utah law and that he intended to comply with that request. The second asserted that the expenditures from the Cow Calf Account were "used strictly to pay for expenses necessary to feed and maintain the herd" and could therefore not be considered "a disposition of assets."

¶10 Following Smith's failure to return the money and turn over the stock certificates, CMP filed a Notice of Defendant's Non-Compliance with Court Order & Request for Telephone

---

1. The court determined that Smith still owned the stock certificates and shares in DGSI because transferring the certificates to his wife did not "equate to a change of share ownership in" DGSI. Smith does not contest this determination on appeal.

2. A praecipe, also spelled precipe, is a common law "writ ordering a defendant to do some act or to explain why inaction is appropriate." *Praecipe*, Black's Law Dictionary (11th ed. 2019).

Conference, in which it asked the district court for "a telephone conference to secure guidance from this Court regarding the next steps that this Court will expect CMP to follow in order to seek sanctions for [Smith's] contempt." CMP did not request an order to show cause or file a motion for sanctions.

¶11 The court scheduled a hearing at CMP's request and, when the parties appeared for the hearing, announced, "We're here on a motion for sanctions." Smith was not present at the hearing, and his counsel pointed out that CMP had not actually filed a motion for order to show cause or a motion for sanctions and in its filing was only "asking the court for advice." Smith's counsel asserted that the court could not hold Smith in contempt for failing to turn over the funds and stock certificates without "go[ing] through a contempt process."

¶12 Nevertheless, the court proceeded to hold Smith in contempt (the Second Contempt Order) for failing to return the funds to the Cow Calf Account and for signing the stock certificates over to his wife. As sanctions, the court ordered Smith to serve fourteen days of jail time and pay a $500 fine. Smith served that time and paid the fine. He now appeals.

ISSUES AND STANDARD OF REVIEW

¶13 Smith asserts that the district court could not hold him in contempt for spending money out of the Cow Calf Account because he did not receive notice that the court would be considering contempt on that basis and did not have any opportunity to defend himself against those specific accusations. Further, he argues that the court could not hold him in contempt for failing to return the money to the Cow Calf Account and produce the stock certificates because there was no pending order to show cause or motion for sanctions when the court

made that ruling.[3] Whether someone has been provided with "timely and adequate notice and an opportunity to be heard in a meaningful way," in compliance with due process protections, is a "question[] of law which we review for correctness." *In re Cannatella*, 2006 UT App 89, ¶¶ 2–3, 132 P.3d 684 (quotation simplified).

ANALYSIS

## I. First Contempt Order

¶14    First, Smith argues that he did not receive adequate notice that he might be held in contempt for making expenditures out of the Cow Calf Account. "To satisfy an essential requisite of procedural due process, a hearing must be prefaced by timely notice which adequately informs the parties of the specific issues they must prepare to meet." *Nelson v. Jacobsen*, 669 P.2d 1207, 1213 (Utah 1983) (quotation simplified); *accord In re Cannatella*, 2006 UT App 89, ¶ 3, 132 P.3d 684.

---

3. Smith also appealed the district court's findings regarding his ownership interest in the two promissory notes and the Cow Calf Account. However, at oral argument on appeal, CMP acknowledged that those findings were no longer of any effect in light of our reversal of the underlying judgment in the previous appeal involving the parties. *See generally Cook Martin Poulson PC v. Smith*, 2020 UT App 57, 464 P.3d 541. In light of this acknowledgment, we need not reach the merits of Smith's appeal of those factual findings; instead, we simply clarify that all findings the district court previously made regarding ownership of these assets are of no further legal effect. If questions regarding ownership arise in further proceedings, the court will need to take evidence and make new findings.

¶15　The court's order to show cause advised Smith that he should be prepared to address his alleged failure to comply with the First and Second Supplemental Orders prohibiting him from disposing of property; his alleged failure to comply with the writ of execution; his alleged actions impeding the execution of the writ by the sheriff; and his removing assets out of Utah that were listed in the writ. Only the first allegation could possibly be construed as pertaining to his spending money from the Cow Calf Account, but we agree with Smith that nothing in the order to show cause or the supporting motions adequately put him on notice that his expenditure of funds from the Cow Calf Account would be a subject of the contempt hearing. Indeed, to the extent that those documents referenced specific conduct, they mentioned only "removing assets . . . from the State of Utah." Those documents did not specifically address the Cow Calf Account or Smith's use of funds from it.

¶16　Nevertheless, CMP asserts that the more detailed allegations in its motion for order to show cause should be read as providing Smith notice of the specific actions that allegedly violated the Second Supplemental Order. Even accepting this argument, however, none of the allegations in CMP's motion for order to show cause would have alerted Smith that spending Cow Calf Account funds was one of the alleged violations of the court's order. The motion for order to show cause alleges only that Smith pledged the livestock as security for a loan, sold cattle, and moved the promissory notes to a safe deposit box in Idaho. It mentions nothing about the Cow Calf Account or Smith's expenditures from that account.

¶17　Because Smith did not have adequate notice that spending from the Cow Calf Account would be at issue in the

contempt hearing, the court erred by entering the First Contempt Order against him.[4] We therefore reverse that order.

## II. Second Contempt Order

¶18   Next, Smith argues that he did not receive adequate notice that the hearing on CMP's motion for a telephone conference would be one in which he needed to be prepared to defend himself against contempt allegations.

¶19   CMP maintains that the order for Smith to return the funds to the Cow Calf Account and produce the stock certificates was an opportunity for him to purge his contempt with respect to the First Contempt Order. Accordingly, CMP asserts that the court's Second Contempt Order did not find additional contempt at all but merely imposed sanctions based on the First Contempt Order due to Smith's failure to purge his contempt.

¶20   However, nothing in the First Contempt Order stated or suggested that Smith would have an opportunity to purge his contempt. Moreover, nothing in the Second Contempt Order suggested that it was merely an implementation of a sanction in the First Contempt Order rather than a new finding of contempt. To the contrary, the court stated, "I find . . . Smith in contempt of court for not complying with the . . . [First Contempt Order] where . . . [t]he defendant was ordered to return [$26,100.45] to the [Cow Calf Account]." Further, the court found Smith in contempt because he "intentionally went against the November

---

4. The First Contempt Order also did not explicitly find that the expenditures constituted a disposal of assets. Given the legitimate ways the funds might have been used—e.g., to maintain other assets—it was not adequate for the court to assume that any expenditure out of the account was a violation of the Second Supplemental Order.

2018 order when he endorsed the stock certificates in February of 2019." Not only did this action take place after the previous contempt hearing, but in the First Contempt Order, the court found that Smith was *not* in contempt with respect to the stock certificates. Thus, the Second Contempt Order was clearly a new contempt finding and not merely a determination that Smith had not purged his previous contempt.

¶21 Because no motion was pending when the court issued the Second Contempt Order, and the hearing at which that order was issued was noticed only to address "Plaintiff's Notice of Defendant's Non-Compliance with Court Order," Smith did not receive adequate notice that the court would address further contempt allegations at the hearing.[5] Accordingly, we must reverse the district court's Second Contempt Order as well.

CONCLUSION

¶22 Because Smith did not receive adequate notice regarding the contempt allegations he would face at the contempt hearings, both the First and Second Contempt Orders violated his due process rights. Accordingly, we reverse those orders and vacate the fine imposed by the court.[6]

––––––––––

5. We also note that there was no evidence that Smith actually signed the stock certificates over to his wife—only that he expressed an intent to do so. Accordingly, the court could not hold him in contempt for disposing of the stock certificates.

6. As Smith has already served his jail time, we are unable to undo that part of the sanction.